In the Matter of Helen
FULTON, Plaintiff.

Thomas A. FULTON, III, Appellant,

v.

John L. WALKER, Respondent.

No. WD 47253.

Missouri Court of Appeals,
Western District.

Oct. 26, 1993.

Robert James Seek, Eldon, for appellant.

John L. Walker, pro se.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

SPINDEN, Presiding Judge.

When Helen Fulton became totally incapacitated and disabled, the trial court appointed John L. Walker, an attorney, rather than her son, as her guardian and conservator. Her son, Thomas A. Fulton, III, appeals. We affirm.

In 1985, Helen Fulton requested the court to appoint James A. Grantham as her limited conservator. Grantham served as her limited conservator until he was elected associate circuit judge in Miller County. On May 14, 1992, Helen Fulton nominated Walker as limited conservator, and on May 29, 1992, Walker filed a petition for appointment of successor fiduciary with the court. On June 1, 1992, Judge Grantham appointed Walker as attorney for Helen Fulton, and on July 2, 1992, Judge Grantham appointed Walker as successor limited conservator. On August 12, 1992, Walker filed his petition to be appointed guardian of Helen Fulton. Because Judge Grantham had served as limited conservator for Helen Fulton, Judge Gary Schmidt was assigned to the case. He appointed Walker guardian ad litem of Helen Fulton for purposes of medical treatment and set a hearing for November 19, 1992. Thomas Fulton later filed his own petition for appointment as his mother's guardian and conservator.

After a hearing, the trial court appointed Walker to serve as Helen Fulton's guardian and conservator. In announcing its decision, the trial court said:

> ... I certainly would not be willing to find as a matter of law that either Mr. Walker, the public administrator, or you, Mr. Fulton, would be unsuited or unfit, unwilling to act. I do think that it's a question of geography, and a question of

geography controlling over the statutory preference or personality.

And it really has more to do with the Court's reaction as to where will Mrs. Fulton be the most comfortable for the last years of her life. And it just seems that the Central Missouri area would be that place.

The trial court issued its "Judgment of Incapacity and Disability" in which it found that Helen Fulton was "totally incapacitated" and "totally disabled" and that "John L. Walker is the suitable and qualified person to serve as guardian ... and conservator" of Helen Fulton. The judgment, however, did not reflect what the trial court had said on the record at trial.

Thomas Fulton appeals. He claims that the trial court erred and abused its discretion in appointing Walker as guardian and conservator because it applied an improper factor, geographical location, and it did not give sufficient deference to a blood relative.

■ We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Estate of Davis,* 758 S.W.2d 461, 463 (Mo.App.1988). We typically disregard a trial court's oral statements made in ruling on an issue. *In re Estate of Oberman,* 281 S.W.2d 549, 553 (Mo.App. 1955). Such statements are not part of the trial court's order or judgment and may be considered only as an explanation of the order or judgment. *Green v. First National Bank of Kansas City,* 173 S.W.2d 763, 764 (Mo.App.1943); *Snell v. Overfelt,* 307 S.W.2d 716, 720 (Mo.App.1957). However, if neither party requests that the court make specific findings of fact or conclusions of law, we must resolve all factual issues in accordance with the result reached and must affirm the judgment under any reasonable theory supported by the evidence. *Brown v. Storz,* 710 S.W.2d 402, 403 (Mo.App.1986).

■ Thomas Fulton contends that, pursuant to § 475.050, RSMo Cum.Supp.1992, he should have been given preference for appointment because he was Helen Fulton's son. Section 475.050 provides:

1. Before appointing any other person, organization or corporation as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:

. . . .

(2) Any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a durable power of attorney executed by the incapacitated or disabled person, or in an instrument in writing signed by the incapacitated or disabled person and by two witnesses who signed at his request, before the inception of his incapacity or disability, at a time within five years before the hearing when he was able to make and communicate a reasonable choice;

(3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person and any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a spouse or relative executed within five years before the hearing.

2. Except for good cause shown, the court shall make its appointment in accordance with the incapacitated or disabled person's most recent valid nomination of a person qualified to serve as guardian of the person or conservator of the estate. In the event there is not brought to the attention of the court any such valid nomination executed within five years before the hearing, then the court shall give consideration to the most recent valid nomination brought to its attention, but the court shall not be required to follow such nomination.

Section 475.050.1(3) creates a limited preference for the appointment of relatives as guardian and conservator of an incapacitated and disabled person; however, that subsection is subordinate to the preferences established in § 475.050.1(1) and (2). *In the Matter of Weissinger,* 720 S.W.2d 430, 435 (Mo. App.1986).

Helen Fulton nominated John Walker as successor limited conservator; this nomination would control over the preference for the appointment of a blood relative. Such a conclusion is supported not only by § 475.050, but by § 475.062.1, RSMo 1986, which provides that when the alleged disabled person consents to the appointment of a conservator:

[T]he court, after appointment of counsel for the alleged disabled person, if satisfied, by interview with the alleged disabled person or otherwise, that the alleged disability does exist, that the disabled person wishes the appointment and has capacity to understand the need for it and make a reasonable choice of conservator and that the person nominated as conservator is suitable, qualified and has or will accept the appointment, may, without notice or hearing, appoint as conservator of the estate, the person ... designated by the disabled person.

Helen Fulton designated Walker as successor limited conservator, and the trial court accepted that designation as a reasonable choice.

■ Thomas Fulton contends, however, that § 475.050.1(2) requires that Helen Fulton's nomination had to be made prior to the inception of her disability. He argues that because Helen Fulton had a limited conservator prior to her nomination of Walker, a court had necessarily already found her to be disabled. Hence, he concludes, she could not have made her nomination of Walker prior to the inception of her disability. We disagree.

If a person consents to a conservator pursuant to § 475.062 and the trial court concludes that the person "has capacity to understand the need for it and make a reasonable choice of conservator and that the person nominated as conservator is suitable, qualified and has or will accept the appointment," the trial court "may, without notice or hearing, appoint as conservator of the estate, the person ... designated by the disabled person." The trial court found that Helen Fulton made a reasonable choice in her designation of Walker as limited conservator. From the record before us, nothing convinces us that Helen Fulton would not have wanted

Walker to serve as her full conservator, too. As stated in *Byrne v. Schneider*, 808 S.W.2d 936, 940 (Mo.App.1991), "The person the ward requests, or whom it could be inferred she would request, should, consequently, be given preference." Thus, the trial court's appointment of Walker as full conservator was supported by substantial evidence.

■ Helen Fulton, however, did not request anyone to serve as her guardian. The rule is that relatives should be appointed over strangers as a guardian unless the record reveals evidence of dissension in the family, adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason why the stranger would best serve the interests of the incompetent. *Roots v. Reid*, 555 S.W.2d 54, 57 (Mo.App.1977). Such rule does not give relatives the absolute right to impose themselves on the incompetent, but recognizes a presumption that if an incompetent could express her intent she would prefer a relative as her guardian over a stranger. *Byrne*, 808 S.W.2d at 940. The rule applies only when the incompetent has not made her intent known; and, therefore, the court is forced to determine whom the incompetent would want to appoint if capable. *Id.* at 941.

■ The record discloses dissension between Helen Fulton and her son. Helen Fulton tried living with her son from April 1991 to May 1992 in Kansas City. During this time, Helen Fulton wrote a friend repeatedly that she wanted to leave her son's house. She told the friend that she did not like living with her son, that it was not her home, and that her son's family was mean to her.

When the friend arranged for Helen Fulton to live in a residential facility in Central Missouri, Helen Fulton signed her own admission papers. She indicated to the facility's administrator that she wanted only her friend's name in her file as the person to call in an emergency. When asked if she would like to call her son, she said no because she did not want him to know where she was. When asked why she did not want him to know, she responded, "It's bad. It's bad." Couple this dissension with Helen Fulton's

preference to return to Central Missouri, we find that the trial court's decision to appoint Walker as guardian of Helen Fulton was supported by substantial evidence. The judgment of the trial court appointing Walker as conservator and guardian is affirmed.

All concur.